IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ARTHUR MANNING, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:05-CV-1300-JOF |
| CITY OF ATLANTA, et al., | : | |
| | : | |
| Defendants. | : | |

### OPINION AND ORDER

This matter is before the court on Plaintiff's motion to file amended complaint [15], Defendants' motion to dismiss [19-1] and motion to stay [19-2].

**I.    Statement of the Case**

   **A.    Procedural History**

Plaintiff, Arthur Manning, Jr., filed suit alleging excessive force against Defendants, City of Atlanta, the Atlanta Police Department, Shirley Franklin, Richard Pennington, and Raymond Price, individually and in his official capacity, on May 17, 2005. On August 23, 2005, Plaintiff filed a motion for leave to file an amended complaint seeking to change Defendant Raymond Price to Raynard Price, to add certain factual allegations and to add two

AO 72A
(Rev.8/82)

John Doe defendants.[1]  On September 14, 2005, Defendants filed a motion to dismiss and a motion to stay discovery pending the outcome of the motion to dismiss.

### B.     Facts

On August 24, 2004, while Plaintiff was conversing with another person, Defendant Price along with other police officers began to chase several suspects. Cmplt. ¶¶ 6-7. Plaintiff was knocked to the ground when several people began running. Cmplt. ¶ 8. While Plaintiff was on the ground, a tall police officer, believed to be either Defendant Price, John Doe 1, or John Doe 2 jumped down onto Plaintiff's leg and broke it. Cmplt. ¶ 9. Plaintiff was placed in handcuffs, and the tall police officer struck Plaintiff in the head with his elbow and told the other officers to hold him. Cmplt. ¶ 10. One of the police officers tried to pick up Plaintiff by pulling on his handcuffs at which point Plaintiff informed the officers that he believed his leg was broken. Cmplt ¶ 11. The officers lifted Plaintiff by his handcuffs and he fell to the ground. Cmplt. ¶ 12. Upon lifting the Plaintiff again, an officer struck Plaintiff in the throat with his forearm causing Plaintiff to fall again. Cmplt. ¶ 12. The officer then dragged Plaintiff by his shirt until his pants came off and placed him on a sheet in order to drag him up a hill. Cmplt. ¶ 13.

---

[1] Defendants do not contest Plaintiff's motion for leave to file an amended complaint, and in fact their motion to dismiss in fact responds to Plaintiff's amended complaint. Therefore, the Court GRANTS Plaintiff's motion for leave to file an amended complaint.

AO 72A
(Rev.8/82)

### C. Contentions

Defendants claim that Plaintiff's complaint should be dismissed in its entirety. First, Defendants contend that because he is trying to hold the City liable under a *respondeat superior* form of liability, Plaintiff's complaint should be dismissed. Second, Defendants contend that Plaintiff's complaint should be dismissed as to the individual defendants as they are entitled to qualified immunity. Defendants further contend that discovery should be stayed pending this motion to dismiss.

Plaintiff avers that he is not trying to assert a *respondeat superior* form of liability against the City of Atlanta, but rather is alleging that the City's own policies led to his injuries. He also contends that the individual Defendants are not entitled to qualified immunity.

## II. Discussion

### A. Municipal Liability

Defendants contend that their motion to dismiss should be granted because the City of Atlanta and the individual defendants in their official capacities cannot be held liable under a *respondeat superior* theory. Further, Defendants contend that in order for Plaintiff to state a claim for relief he "must specifically allege and demonstrate that the City has a policy or custom that allows police officers to intentionally and maliciously injure citizens during the course of an arrest." Mot. to Dismiss at 7.

Here, Plaintiff contends that "Defendants' unconstitutional actions were made pursuant to or according to the custom or policy of the City of Atlanta, or the Atlanta Police

Department . . . ." Cmplt. ¶ 16. Plaintiff also asserts that the "City of Atlanta, Atlanta Police Department, and Richard Pennington failed to adequately and properly train or discipline Defendant Price, John Doe 1 and/or John Doe 2." *Id.*

Defendants are correct in asserting that a municipality cannot be held liable under a theory of *respondeat superior*. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978). A plaintiff may assert that a "policy" or a "custom" caused the plaintiff's injury in order to establish municipal liability. *See, e.g., Canton v. Harris*, 489 U.S. 378, 389 (1989). However, in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court held that there is no heightened pleading requirement more stringent than Rule 8(a)(2) with respect to municipal defendants in § 1983 litigation. *Id.* at 164. While the Eleventh Circuit has long discussed the ramifications of *Leatherman* for other issues in § 1983 litigation, *see Swann v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004), the court finds *Leatherman* directly applicable here.

While the court notes that a plaintiff faces a high hurdle in establishing municipal liability under these circumstances, the court finds, considering *Leatherman*, that it would be inappropriate to dismiss Plaintiff's claim against the City of Atlanta prior to discovery had he not cited to any specific policy of the City. However, Plaintiff has asserted a specific policy of the City's which led to the constitutional tort, the City's failure to train and discipline police officers. Thus, the court concludes that Plaintiff has sufficiently pled a custom or policy argument against the City of Atlanta and the individual Defendants in their official

4

AO 72A
(Rev.8/82)

capacity, and the court DENIES Defendants' motion to dismiss with respect to the City of Atlanta and the individual Defendants in their official capacity.

### B.     Qualified Immunity

Defendants contend that Plaintiff's complaint should be dismissed against Defendant Price in his individual capacity because he is entitled to qualified immunity. Where a civil rights action involves an allegation of excessive use of force on the part of a police officer, qualified immunity will shield that government official from liability under 42 U.S.C. § 1983 if the officer's actions do not violate clearly established constitutional rights of which a reasonable person would have known. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotations and citations omitted).

The test for qualified immunity is twofold. First, the court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Id.* at 736. If the defendant would have violated a constitutional right under the plaintiff's allegations, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Accordingly, the first question before the court is whether Defendant's conduct violated Plaintiff's constitutional rights.

A claim that excessive force was used by a police officer pursuant to an arrest arises under the Fourth Amendment. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). To

5

determine whether the officer's conduct in fact violated the Fourth Amendment, the court uses an objective reasonableness test to determine whether the officer's actions were objectively reasonable when considered in the context of the facts and circumstances before the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In determining whether an officer's use of force was objectively reasonable, the Eleventh Circuit instructs that the court must consider "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, and (3) the extent of the injury inflicted."  *Vinyard*, 311 F.3d at 1347. The court should also consider the severity of the crime, the danger to the officer and the risk of flight. *Id.*

After finding that there has been a constitutional violation, the next question is whether that constitutional right was "clearly established" at the time of the violation.  *Id.* at 1349.  In *Hope v. Pelzer,* the Supreme Court stated that "the salient question . . . is whether the state of the law . . . gave [the officers] *fair warning* that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, (2002) (emphasis added).

In some cases the words of a statute will be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the *total absence of case law*."  *Vinyard*, 311 F.3d at 1350 (emphasis in original). The court in *Vinyard* noted:

> [i]n excessive force cases in the Fourth Amendment context, this Court has sometimes considered "obvious clarity" cases as involving conduct "far beyond the hazy border between excessive and acceptable force."  Our "hazy border"

6

> decisions concluded the law was clearly established that the force involved was excessive in the absence of any case law (first type of "obvious clarity" notice). *Priester v. City of Riviera Beach,* 208 F.3d 919, 927 (11th Cir. 2000) (concluding law was clearly established and force was "clearly-excessive-even-in-absence-of-case-law" when officer released police dog to attack plaintiff who was lying on the ground, did not pose a threat to officers or to anyone else, and was not attempting to flee or resist arrest); *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir.2000) (concluding, without case law on point, that the evidence, if credited, suggested "the officers used excessive force in beating Slicker even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way"); *Smith v. Mattox,* 127 F.3d 1416, 1419-20 (11th Cir.1997) (concluding officer's conduct was "far beyond the hazy border" and unlawfulness was "readily apparent even without clarifying caselaw" when officer, while on plaintiff's back and handcuffing him, broke plaintiff's arm requiring surgery for multiple fractures even though plaintiff at the time was offering no resistance at all); *see also Lee v. Ferraro,* 284 F.3d 1188, 1199 (11th Cir.2002) (concluding "[a]s in *Slicker, Priester,* and *Smith,* the peculiar facts of this case are 'so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point'") (quoting *Smith,* 127 F.3d at 1419).

*Vinyard*, 311 F.3d at 1350, n.18. The court in *Vinyard* relying on this precedent found

> no objectively reasonable police officer could believe that, after [the plaintiff] was under arrest, handcuffed behind her back, secured in the back seat of a patrol car with a protective screen between the officer and the arrestee, an officer could stop the car, grab such arrestee by her hair and arm, bruise her and apply pepper spray to try to stop the intoxicated arrestee from screaming and returning the officer's exchange of obscenities and insults during a short four-mile jail ride.

*Id.* at 1255.

Also, when there is case law which establishes that certain conduct under a certain circumstance constitutes a constitutional violation and the conduct and circumstances are similar to the case at hand, then the law is also "clearly established." *Id.* at 1251.

7

Similarly, assuming the facts alleged in the complaint, the court concludes that the officers used excessive force and are not entitled to qualified immunity. There is little doubt that the officers were acting within their discretionary duty when arresting Plaintiff. *See Vinyard*, 311 F.3d at 1346. Nonetheless, the court finds that Plaintiff has successfully alleged that there was a constitutional violation, i.e., excessive force. Here, Plaintiff alleges that officers jumped on his leg breaking it while he was laying on the ground. Moreover, Plaintiff contends that one of the officers picked Plaintiff, now with a broken leg, off of the ground and another officer struck him in the neck with his forearm. Considering the factors discussed in *Vinyard* and the facts in *Lee*, as plaintiff was on the ground and not resisting arrest, this court finds that there was no need for the force the officers applied. Also, under Plaintiff's facts there was no flight or danger to the officers. Therefore, the court finds that there was a constitutional violation.

Further, the Defendant Officers' actions violated clearly established law. First, like the defendant in *Vinyard*, no officer could reasonably believe that he could jump on the leg of an arrestee, who is on the ground and not resisting arrest, causing it to break and then lift the arrestee, who has been restrained in handcuffs, and strike him in the neck. "The peculiar facts of this case are 'so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point.'"

8

AO 72A
(Rev.8/82)

Moreover, in *Smith v. Mattox*, a factually similar situation, the Eleventh Circuit found that it was excessive force to break an arrestee's (who was not resisting arrest) arm in the process of handcuffing him.  Therefore,  the officers' conduct violated clearly established case law.

There was absolutely no need for force under Plaintiff's facts, Defendants allegedly used excessive force in Plaintiff's arrest, and there was clearly established law stating that such force amounts to a constitutional violation.  Therefore, the officers are not entitled to qualified immunity at this stage in the proceedings.  Therefore, the court DENIES Defendants' motion to dismiss based on qualified immunity.  As the court has denied Defendants' motion to dismiss, there is no need to stay discovery.  Therefore, Defendants' motion to stay is DENIED AS MOOT.

AO 72A
(Rev.8/82)

### III.     Conclusion

The court GRANTS Plaintiff's motion to file amended complaint [15], DENIES Defendants' motion to dismiss [19-1], and DENIES AS MOOT Defendants' motion to stay [19-2].

**IT IS SO ORDERED** this 9th day of February 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE
