IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ARTHUR MANNING, JR., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:05-CV-1300-JOF |
| CITY OF ATLANTA, et al., | : |
| | : |
| Defendants. | : |

**OPINION AND ORDER**

This matter is before the court on Defendants' motion for summary judgment [30].

**I.   Background**

  **A.   Procedural History**

On May 17, 2005, Plaintiff, Arthur Manning, Jr., filed suit raising claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments against Defendants, City of Atlanta, the Atlanta Police Department,[1] Shirley Franklin in her capacity as Mayor of the City of Atlanta, Richard Pennington in his official capacity as Chief of Police of the

---

[1] The Eleventh Circuit has noted that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit . . . ." *Lawal v. Fowler*, 196 Fed. Appx. 765, 768 (11th Cir. 2006); *Lovelace v. DeKalb Cent. Prob.*, 144 Fed. Appx. 793, 795 (11th Cir. 2005). Therefore, the court finds that the Atlanta Police Department is not an entity subject to suit. Therefore, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's claims against the Atlanta Police Department.

Atlanta Police Department (hereinafter collectively "City Defendants"), and Raymond Price (hereinafter "Defendant Price"), individually and in his official capacity.  On February 9, 2006, the court granted Plaintiff's motion for leave to file an amended complaint seeking to change Defendant Raymond Price to Raynard Price, to add certain factual allegations and to add two John Doe defendants.[2]  On September 18, 2006, Defendants filed a motion for summary judgment.  As of the date of this order, Plaintiff has yet to respond to Defendants' motion for summary judgment.

**B.    Facts**

On August 24, 2004, Defendant Price and several officers responded to a call about several males stripping parts out of a stolen vehicle.  Upon the officers' arrival at the scene, several men including Plaintiff fled. Defendant Price and two other officers gave chase. While chasing the suspects the officers yelled, "stop, police."  Plaintiff and another man tripped and stumbled down a steep hill. When the officers reached and handcuffed Plaintiff, he complained of an injured leg.  The officers called for an ambulance.  Upon arrival of the ambulance the paramedics were not able to get a gurney to Plaintiff.  As Plaintiff was unable to walk, the officers placed Plaintiff on a bed sheet and dragged him up the hill.  Plaintiff was arrested.

---

[2] Plaintiff's claims against the John Doe defendants are DISMISSED without prejudice pursuant to Fed. R. Civ. P. 4(m).

On August 28, 2004, Plaintiff was examined at Northside Hospital and was diagnosed him with an "acute tibial plateau fracture." Two days prior to his arrest, on August 22, Plaintiff submitted a disability claim to his employer. In his disability claim, Plaintiff contends that he has suffered a "fractured right tibial plateau" and lists the date of his injury as August 21, 2004.

## II.   Discussion

### A.   Fourteenth Amendment

In *Graham v. Connor*, 490 U.S. 386, 395-96 (1989), the Supreme Court held that when the use of force by law enforcement officers arises in the context of an arrest, investigatory stop, or other seizure, the appropriate, indeed, sole source of constitutional protection is the Fourth Amendment. In fact, the *Graham* court ruled that most excessive force cases borne out of an arrest, investigatory stop, or other seizures of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under the Fourteenth Amendment's "substantive due process" analysis. *Id.* at 395.

As Plaintiff's claim is for excessive force and unreasonable search during an arrest, applying *Graham*, the court finds that Plaintiff's claim is properly raised under the Fourth as opposed to the Fourteenth Amendment. Therefore, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claim for violations of the Fourteenth Amendment by Defendant Price.

3

### B.     Fourth Amendment

In his complaint Plaintiff contends that Defendant Price violated his Fourth Amendment rights first by conducting an unreasonable search and seizure and second by using excessive force during his arrest. The court will address each of the alleged violations in turn.

### 1.     Search and Seizure

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. "An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

> For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

*Id.*

In Georgia "[m]isdemeanor obstruction consists of knowingly and wilfully obstructing or hindering any law enforcement officer in the lawful discharge of his duties." O.C.G.A. § 16-10-24(a). "Flight after a lawful command to halt constitutes obstruction of an officer." *Dukes v. State*, 275 Ga. App. 442, 443 (2005).

4

Here, as Plaintiff fled after the officers issued the command "stop, police," the circumstances are such that a prudent person would believe that Plaintiff had committed the crime of misdemeanor obstruction. Therefore, Defendant Price had probable cause to arrest Plaintiff.

### 2. Excessive Force

A claim that excessive force was used by a police officer pursuant to an arrest arises under the Fourth Amendment. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). To determine whether the officer's conduct in fact violated the Fourth Amendment, the court uses an objective reasonableness test to determine whether the officer's actions were objectively reasonable when considered in the context of the facts and circumstances before the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In making this inquiry, the court is to disregard the officer's underlying intent or motivation. *Id.* Moreover, the court is to judge the objective reasonableness of the officer's actions from the perspective of an officer on the scene. *Pace v. Capobianco*, 283 F.3d 1275, 1281 (11th Cir. 2002). In *Nolin v. Isbell*, 207 F.3d 1253, 1254-55 (11th Cir. 2000), a police officer witnessed what he believed to be a fight between two people. The officer grabbed one of the participants from behind by shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him. *Id.* at 1255. The Eleventh Circuit Court of Appeals found that

5

the officer's actions fell within the ambit of the de minimis force exception to the Fourth Amendment's prohibition on the excessive use of force. *Id.* at 1258, 1258 n.4.

Here, the facts show that Defendant Price and the other officers used far less force than in *Nolin*. The officers handcuffed Plaintiff, and upon being informed that he was injured, the officers called for an ambulance. When the ambulance arrived, the officers placed Plaintiff on a bed sheet and dragged him up the hill because the paramedics were unable to reach Plaintiff with a gurney. The court finds that the officers' actions were objectively reasonable considering the context and facts of the situation.

For all of the aforementioned reasons, the court finds that Defendant Price did not violate the Fourth Amendment rights of Plaintiff. Therefore, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claim for violations of the Fourteenth Amendment by Defendant Price.

### 3. Defendant City of Atlanta

When a city officer is sued under § 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991). Therefore, Plaintiff's claims against

Shirley Franklin, Richard Pennington, and Raynard Price in their official capacities effectively merge with his claim directly against the City of Atlanta.

Courts only inquire into a governmental entity's custom or policy upon determining that a constitutional deprivation has occurred. *Sanders v. City of Union* Springs, 2006 WL 3307446 (11th Cir. Nov. 15, 2006) (citing *Rooney v. Watson,* 101 F.3d 1378, 1381 (11th Cir. 1996); *Vineyard v. County of Murray,* 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise.").

Having found that there was no constitutional violation on the part of the arresting officers under either the Fourth or the Fourteenth Amendments, Plaintiff cannot maintain a § 1983 action against the City of Atlanta for any municipal policies. Therefore, the court GRANTS Defendants' motion for summary judgment with regard to the City of Atlanta.

### C.    State Law Claims

There is some confusion as to whether Plaintiff is asserting state law claims against Defendants. While Plaintiff does not raise state law claims among his counts, he does assert in his section headed "nature of this action" that Defendants tortiously assaulted and battered Plaintiff and that Defendants intentionally inflicted physical harm and emotional distress on Plaintiff.

7

A district court has the discretion to dismiss state law claims when it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999) (citations omitted). However, if the court exercises this discretion, a plaintiff's state law claims should be dismissed without prejudice so that they later may be brought in state court. *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999).

As the court has already found that Plaintiff has failed to state viable § 1983 causes of action against Defendants, the court opts to dismiss any state law claims which Plaintiff may be raising finding that the disposition of such claims would be better suited for state court. Accordingly, the court DENIES Defendants' motion for summary judgment on the state law claims. Instead, this court exercises its discretion and DISMISSES WITHOUT PREJUDICE any state law claims.

**III.  Conclusion**

The court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion for summary judgment [30]. The court DISMISSES WITHOUT PREJUDICE Plaintiff's state law claims.

8

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this 1st day of June 2007.


                                                  s/ J. Owen Forrester
                                                     J. OWEN FORRESTER
                                 SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)